# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9408 | **DATE** | 10/20/2004 |
| **CASE TITLE** | James Dillard vs. Starcon International | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Memorandum Opinion and Order entered. Defendant's Motion to Dismiss Counts II-V of Plaintiff's Amended Complaint [#16] is hereby granted in part and denied in part. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 21 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 17 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/20/2004 | |
| | | 2004 OCT 20 PM 2:12 | date mailed notice | |
| FT/*secy* | courtroom deputy's initials | Date/time received in central Clerk's Office | FT mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES DILLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 03C 9408 |
| ) | |
| ) | Magistrate Judge |
| vs. ) | Arlander Keys |
| ) | |
| STARCON INTERNATIONAL ) | |
| INC., an Illinois corporation, ) | |
| ) | |
| Defendant. ) | |

DOCKETED
OCT 2 1 2004

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Defendant's Motion to Dismiss Counts II-V of Plaintiff's Amended Complaint, filed pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff claims that, as an employee for Defendant Starcon International, Inc ("Starcon"), he was subjected to a hostile work environment, discrimination based on his race, retaliation, and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. (West 2004), and 42 U.S.C. § 1981 (West 2004). For the reasons set forth below, Defendant's Motion is granted in part and denied in part.

**BACKGROUND FACTS[1]**

Plaintiff, James Dillard, began working for Starcon on April 18, 1996 as a "B Mechanic Apprentice," at the JLM job site in Blue Island, Illinois. By 1998, Plaintiff had been promoted to the position of "A Mechanic Apprentice." Plaintiff passed his plate welder examination and was promoted to "C Plate Welder" in early 1998. From 1998 through 2000, Plaintiff was employed in various positions at various job sites for short periods of time. Beginning in 2000, Plaintiff was sent to the Exxon Mobil job site in Channahon, Illinois. Plaintiff was certified to weld on site after passing a site-specific pipe welding test. Between late 2000 and early 2001, Plaintiff passed another pipefitting and pipe welding course and became a "B Pipe Welder."

Plaintiff alleges that he was subjected to a racially hostile work environment during his entire two year stint at the Exxon site. In addition to telling racially discriminatory and offensive jokes, employees constantly referred to black workers on the job site as "niggers."

Additionally, Plaintiff was not offered opportunities to weld, despite the fact that he was fully certified to do so. Plaintiff's white co-workers were offered opportunities to weld while the majority of Plaintiff's responsibilities were allocated

---

[1] In considering the instant Motion, the Court takes the factual allegations of the Complaint as true.

to mechanical work. In fact, Plaintiff contends that he was offered only three or four welding jobs during his entire tenure on site despite the fact that he received positive performance evaluations as a "B Welder" on the Exxon job site.

Plaintiff complained to Human Resources about this offensive treatment. Personnel in the Human Resources Department not only failed to act on his complaints, but also advised Plaintiff that he would be laid off if he continued to complain.

Plaintiff eventually requested a transfer to an alternate job site in 2002. In July of 2002, Defendant granted Plaintiff's request and transferred him to the Citgo Refinery job site. Again, Plaintiff was classified to work as a "B Welder." Like the Exxon job site, the Citgo site was also a racially hostile environment. Unlike white welders, he was again assigned primarily mechanical maintenance work, though he was permitted to do some welding.

Employees on the Citgo job site also told jokes using the word "nigger" and referred to black employees as "niggers". However, this time they were not alone – supervisors joined with the employees in making racist and bigoted remarks. In one incident, co-workers told him to "bring his own rope" to the next company party, implying that he would be lynched. Again Plaintiff reported this conduct to Human Resources. Personnel with Human Resources told him for the second time that he would

be laid off if he continued to complain.  The work environment did not improve.

In the summer of 2003, Plaintiff worked on a pipe welding job for "a couple of days" prior to realizing he was welding with the incorrect welding rod.  After reporting his error, Plaintiff was suspended from the Citgo job site for three days.  Shortly thereafter, Plaintiff met with Human Resources and the Citgo project manager to discuss the incident.  This was Defendant's first disciplinary action against Plaintiff.  They offered him a demotion to a lower welder classification and the pay of an "A Mechanic," an $8.00 hourly decrease.  Plaintiff refused to accept the demotion and was terminated on August 15, 2003.

Plaintiff contends that two other "B Welders", both white, Jim Lefowski and Jim Little, made comparable welding mistakes on the Citgo job site in 2000 and 2001, respectively.  Subsequent to their welding mistakes, both white "B Welders" were also removed from the Citgo site, however, unlike Plaintiff, Messrs Lefowski and Little were promoted to foremen at other sites.  In addition, each received a $2.00 hourly pay increase.

**PROCEDURAL HISTORY**

Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 20, 2003.  Although Plaintiff's charge is less than comprehensive, it does specify that he was "subjected to racial

harassment in the form of racial remarks." (8/20/03 Charge of Discrimination). The charge also alleges race based discrimination. *Id.*

The EEOC issued a Notice of Right to Sue on October 6, 2003. Plaintiff filed his *pro se* complaint on December 30, 2003, within 90 days of receipt of the Notice of Right to Sue. The Court appointed counsel for Plaintiff on January 15, 2004. Originally assigned to District Judge Castillo, both parties consented to proceed in this Court on March 31, 2004. On June 28, 2004, Plaintiff filed an Amended Complaint alleging five causes of action: 1) hostile work environment under Title VII; 2) race discrimination under Title VII; 3) retaliation under Title VII; 4) retaliatory discharge under Title VII; and 5) race discrimination under Section 1981. Defendant moved to Dismiss Counts II through V of Plaintiff's Amended Complaint. Plaintiff voluntarily dismissed Count III in his Opposition Brief. Counts II, IV and V are the subject of this Memorandum Opinion and Order.

## STANDARD FOR MOTION TO DISMISS

In reviewing Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, the Court accepts all well-pled factual allegations in the Complaint as true, making all permissible inferences in Plaintiff's favor. *Williams v. Seniff*, 342 F.3d 774 (7th Cir. 2003). Defendant's

Motion to Dismiss tests the sufficiency of the Complaint, not the merits of the case. *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003). The Court will dismiss the Complaint only "when it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in his or her claim." *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).

**DISCUSSION**

**I. Plaintiff's Title VII Wrongful Termination Claim Is Within The Scope Of The EEOC Charge.**

Defendant argues that Plaintiff's Wrongful Termination claim is beyond the scope of his EEOC charge and should be dismissed from this suit. The Court disagrees. It is clear on the face of the EEOC charge that Plaintiff alleged discrimination based on his race. Furthermore, Plaintiff filed a charge of discrimination with the EEOC on August 20, 2003, less than 300 days from the date Plaintiff discovered the unlawful employment practice. *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001).

"[A] Title VII plaintiff may bring only those claims that were included in [his] EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Haugerud v. Amery School Dist.*, 259 F.3d 678, 689 (7th Cir. 2001)(citing *McKenzie v. Ill. Dep't. of*

*Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)). This well established requirement furthers two goals: 1) the EEOC's "investigatory and conciliatory role"; and 2) the EEOC's policing function - warning employers of "conduct about which the employee is aggrieved." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Bypassing the EEOC charge requirement would not only retard the agency's ability to play an intermediary role between employers and the judicial system but would also hamper the EEOC's ability to notify employers of offending conduct. *Id.*

However, "because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir.1992). To determine whether an EEOC charge is comprehensive enough to substantiate a Title VII plaintiff's complaint, the following liberal test is applied: "all Title VII claims set forth in a complaint are cognizable that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc) (quoting *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971)), *cert. denied*, 429 U.S. 986 (1976). The *Jenkins* "like or reasonably

related" test allows the court to hear claims brought in a complaint but not raised in an EEOC charge if "(1) the claim is like or reasonably related to the EEOC charges, and (2) the claim in the complaint could reasonably develop from the EEOC investigation into the original charges." *Bouso v. Elkay Manuf. Co.*, No. 02 C 6630, 2003 WL 22410076, at *8 (N.D. Ill. Oct. 22, 2003)(citing *Harper v. Godfrey Co.*, 45 F.3d 143, 178 (7th Cir. 1995)).

Plaintiff easily satisfies the first component of the "like or reasonably related" test. Plaintiff's written EEOC charge states, "I believe I have been discriminated against based on my race, Black in violation of Title VII of the Civil Rights Act of 1964." (8/20/03 Charge of Discrimination). Count II of Plaintiff's Amended Complaint alleges Title VII Race Discrimination.

Specifically, Plaintiff alleges wrongful termination based on his race - he was ultimately terminated as a result of mistakenly welding with the incorrect rod, yet white employees who made the same mistake were promoted and their pay was increased. It is reasonable to conclude that although Plaintiff did not specifically use the word "terminated" in his EEOC charge, he requested an investigation into his termination based on his allegation that he was racially discriminated against. After all, Plaintiff was fired only five days prior to filing his

EEOC complaint. It is unreasonable to suggest that Plaintiff did not intend for the EEOC charge to encompass this precipitating event. Plaintiff's allegation of wrongful termination is reasonably based on a foundation laid in his EEOC charge. Claims may be linked where they are "so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act." *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir.1993) (allowing a Title VII retaliation complaint, improperly documented on the EEOC charge, to stand with a properly documented age discrimination charge because they were both related in time and substance and both focused on defendant's conduct).

To analyze the second part of the test, the Court must speculate as to what the EEOC might or might not discover in the course of an investigation. *Cheek v. Western and Southern Life Ins. Co.* 31 F.3d 497, 500 (7th Cir. 1994). Shortly after he was fired, Plaintiff requested the EEOC to investigate his claims of racial harassment and race discrimination. However, in his amended complaint, Plaintiff alleged that he was terminated based on his race. He was fired for his welding mistake whereas white employees who made the same mistake were not terminated, instead they were promoted. One would reasonably expect that the EEOC's investigation would uncover the different treatment afforded

white welders who made similar mistakes because he alleged race discrimination on his EEOC charge. *See Haugerud v. Amery School Dist.*, 259 F.3d 678, 690 (7th Cir. 2001).

Because both test components are satisfied, Plaintiff's Wrongful Termination claim is deemed "like or reasonably related" to the EEOC charge he filed on August 20, 2003. *Cheek*, 31 F.3d at 500. Accordingly, it is within the scope of his EEOC charge.

## II. Plaintiff's Title VII Retaliatory Discharge Claim Is Outside The Scope Of The EEOC Charge.

Defendant argues that Plaintiff's Retaliatory Discharge claim is beyond the scope of his EEOC charge and should be dismissed from this suit. The Court agrees.

Plaintiff's Retaliatory Discharge claim is not permissible, both on its face, as well as when screened through the *Jenkins* test outlined above. Plaintiff prevented the EEOC from fully participating in an "investigative and conciliatory role" when he failed to allege retaliatory discharge in his administrative charge. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). It follows that neither Plaintiff nor the EEOC provided Defendant with notice of a charge of retaliation.

First, Plaintiff's EEOC Charge is devoid of any mention of retaliation. Plaintiff alleged only that he was subjected to both racial harassment and racial discrimination. Furthermore,

Plaintiff only checked the box on the form marked "Race." He did not check the box specifically marked "Retaliation" or the box marked "Other (Specify Below)." See *Sitar v. Indiana Dep't. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2001).

In *Sitar*, the plaintiff checked only the retaliation box on the agency's form and alleged there that her termination was in retaliation for an earlier complaint she had filed about sex discrimination. 344 F.3d at 726. The court refused to allow plaintiff's additional sex harassment and sex discrimination claims, reasoning that "[n]ormally, retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another." *Id.* Because the plaintiff's sex discrimination and harassment claims involved separate incidents, conduct, and people, the Court readily concluded that the claims were not reasonably related to her retaliation claim. *Id.* at 726-27. *See also, Lalvani v. Cook County*, No. 98 C 2847, 2000 WL 198459, *5 (N.D. Ill. Feb. 14, 2000)("[R]etaliation and discrimination are separate and distinct wrongs. Indeed, the very gist of a retaliatory harassment action[] is that the employer has 'lashed out' against an employee for filing discrimination charges, not out of animosity for the employee's race or national origin.")

Similarly, Plaintiff's retaliatory discharge claim is not "like or reasonably related" to his claims of racial harassment and discrimination in his EEOC Charge. Although Plaintiff complained to personnel in the Human Resources department at least twice, he never alleged in his EEOC Charge that he was terminated because of these complaints. Plaintiff's Charge alleges only that he was subjected to a hostile work environment and racial discrimination. Plaintiff's allegations of retaliation involve a separate set of incidents, conduct and people – specifically, the conduct and employees of the Human Resources Department, as opposed to Plaintiff's interaction with his coworkers and supervisors.

The Court finds that, while the Charge infers wrongful termination, it stops well short of inferring that he was retaliated against because of his complaints to Human Resources. Accordingly, Plaintiff's allegation that he was discharged in retaliation for complaining about racial discrimination is not reasonably related to the EEOC charge he filed. As a result, Plaintiff is now time barred from filing a charge of discrimination with the EEOC, because more than 300 days from the date Plaintiff discovered the unlawful employment practice have passed. *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001).

This is not the end of the matter, however, because Plaintiff argues that Defendant waived its administrative exhaustion argument by failing to raise this defense in its Answer, or by moving to dismiss the initial Complaint based on administrative exhaustion. Defendant counters that raising its administrative exhaustion argument in this Motion to Dismiss is sufficient, because Plaintiff filed an Amended Complaint, which supersedes his Original Complaint and now governs this matter. Defendant is correct.

"It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void." *Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 638 (7th Cir. 2004). An amended complaint controls the case from that point forward. *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999), cert. denied, 532 U.S. 1065 (Jun 04, 2001). In *Massey*, the plaintiff argued that the defendants had waived their right to raise an administrative exhaustion defense, because they failed to plead it in response to First Amended and Second Amended Complaints. *Id.* at 735. The court rejected this waiver argument, explaining that "because a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses." *Id.*

Plaintiff tucked his disagreement with the *Massey* holding into a footnote in his Opposition to Defendant's Motion to Dismiss. Plaintiff contends that *Massey* is distinguishable, because, although Massey's defendants raised their defense late, they gave the plaintiff sufficient notice that they would be asserting administrative exhaustion as an affirmative defense.

It is easy to see why this argument was hidden under the rug – it is not accurate. *Massey's* holding is based on the defendant's inclusion of the defense in its answer to amended complaints. Noting the potential consequences of not allowing the defendant to raise an administrative exhaustion defense at a later date, the court explained that, "[t]o hold to the contrary would, in essence, enable plaintiffs to change their theory of the case, while simultaneously locking defendants into their original pleading. This result would clearly contravene Federal Rule of Civil Procedure 15(a) which authorizes the amendment of answers 'as justice so requires.'" *Id.*

The Court rejects Plaintiff's half-hearted attempt to distinguish *Massey*, which clearly controls. Accordingly, Defendant's administrative exhaustion defense is allowed and prevails. Count IV is dismissed.

## III. Plaintiff's Section 1981 Wrongful Termination Claim Does Not Require The Filing Of An EEOC Charge.

Defendant next seeks to dismiss Plaintiff's Section 1981 Race Discrimination claim, because Plaintiff did not raise the claim in his EEOC charge[2]. Plaintiff quickly extinguishes this argument by pointing out that a Section 1981 claim is a completely independent avenue of relief than a Title VII claim. *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975). While a timely filed EEOC charge is a prerequisite for Title VII claim, there is no such prerequisite for Section 1981 claims. *Id.*

Defendant also claims that Plaintiff's Section 1981 claim is untimely. Again, Plaintiff sets the record straight. "While a plaintiff must file an EEOC charge within 300 days of the last discriminatory act in order to pursue a Title VII claim in federal court, that is not so under Section 1981. The statute of limitations for a Section 1981 claim in Illinois is two years." Smith v. City of Chicago Heights, 951 F.2d 834, 836 (7th Cir. 1990). Plaintiff was terminated on August 15, 2003 and his First Amended Complaint asserting a claim under Section 1981 was filed less than two years later, on June 28, 2004. Accordingly, Plaintiff's Section 1981 Race Discrimination Count is timely and is not dismissed.

---

[2] Although Defendant abandoned its Motion to Dismiss Count V in its Reply, the Court briefly addresses this issue.

## Conclusion

For the reasons stated above, Defendant's Motion to Dismiss Counts II, III, and V is denied, and Defendant's Motion to Dismiss Count IV is granted.

DATE: October 20, 2004          E N T E R E D

*[signature]*
Judge Arlander Keys
United States Magistrate Judge