UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES DILLARD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 03 C 9408 |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| STARCON INTERNATIONAL, INC., | ) | ARLANDER KEYS |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant Starcon International, Inc.'s ("Starcon") Motion to Enforce an Oral Settlement Agreement against Plaintiff, James Dillard. Mr. Dillard filed suit against Starcon, claiming that he was the victim of racial discrimination and harassment, in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981 (West 2005). Following discovery, the parties engaged in settlement negotiations. Starcon contends that those discussions resulted in an enforceable oral agreement. For the reasons set forth below, this Court grants Defendant's Motion to Enforce the Oral Settlement Agreement.

1

## BACKGROUND FACTS

Mr. Dillard began working for Starcon on April 18, 1996, as a mechanic. Mr. Dillard alleges that, during his seven year employment with Starcon, he was subjected to harassment and racial epithets. After he was terminated on August 15, 2003, Mr. Dillard filed a Charge of Discrimination with both the Illinois Department of Human Rights and the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC investigated the Charge, and issued Mr. Dillard a Right to Sue letter in October of 2003. Mr. Dillard filed suit against Starcon on December 30, 2003.

### Oral Negotiations

Discovery in the matter was scheduled to conclude on March 31, 2005. Between March 17, 2005 and March 20, 2005, the parties engaged in oral settlement negotiations. At the conclusion of these negotiations, both parties agreed that Mr. Dillard would release Starcon from liability in exchange for a monetary payment and Starcon's promise to reinstate his employment.

On March 17, 2005, Starcon's counsel initiated settlement discussions with Mr. Dillard's attorney. (Pl.'s Mem. Opp. Pg. 3). Starcon offered Mr. Dillard a $40,000 cash payment and reinstatement of his employment as a "B Welder;" subject to him passing the B Welder's test. (D.'s Mem. Pg.2). Counsel explained that Mr. Dillard must respond to the offer by the close of

business on Monday, March 21, 2005, in order for Starcon to save on the costs of further depositions of Starcon witnesses, which were scheduled for that week. On March 18, 2005, Mr. Dillard responded with a counter offer, demanding that Starcon reinstate him as a "C Welder," while allowing him two opportunities to pass the "B Welder" test. Mr. Dillard also insisted that Starcon: (1) pay for his training and retesting; (2) pay him $75,000 in damages; and (3) reinstate him in the Chicagoland area.

Starcon agreed to pay for Mr. Dillard's training, provided that he maintain a "B" average, and to provide Mr. Dillard with two opportunities to take and pass the "B Welder" test. In addition, Starcon would reinstate Mr. Dillard as an "A Mechanic," because the "C Welder" position no longer existed, and would reinstate him in the Chicagoland area, provided he remain flexible about working in other locations as work demanded. But, Starcon agreed to pay Mr. Dillard only $45,000 in cash.

Mr. Dillard's counsel concedes that she informed defense counsel that Starcon's reemployment terms, including his reinstatement as an "A Mechanic," earning $22.35 an hour[1], were

---

[1] Specifically, the parties orally agreed that: (1) Mr. Dillard would initially be reinstated as an "A Mechanic" making $22.35 an hour; (2) Mr. Dillard would have the opportunity to be employed as a "B Welder" after training and retesting; (3) Starcon would provide and pay for Mr. Dillard's training, provided he maintain a "B" average; (4) Starcon would provide Mr. Dillard with two opportunities to pass the "B Welder" test; and (5) Mr. Dillard would be reinstated in the Chicago, Illinois area, as long as

3

acceptable. *See* Decl. Of Sallie Smylie. However, Mr. Dillard rejected Starcon's $45,000 cash offer, and demanded $65,000 instead. Later the same day, Starcon upped its cash offer to $50,000, and insisted that Mr. Dillard accept or reject its offer by 10:00 pm on Sunday, March 20, 2005.

On March 20, 2005, Mr. Dillard rejected Starcon's offer of $50,000, and countered at $65,000 firm. Starcon relented, finally agreeing to Mr. Dillard's demand for a $65,000 cash payment. Counsel for Starcon agreed to write the initial draft of the agreement.(Pl.'s Mem. Opp. Pg. 4).

**Written Drafts of the Settlement Agreement**

On March 23, 2005, Starcon faxed the first draft of the settlement agreement to Mr. Dillard. Starcon's draft included a provision stating that Mr. Dillard would be an at-will employee and, therefore, subject to termination by Starcon "for any or no reason, without notice."(D's Mem., Exhibit #2, Pg #2, ¶ 7). Mr. Dillard's counsel responded on March 25, 2005, calling Starcon's draft "the most one-sided, overreaching agreements she had ever seen, and that she could not advise Mr. Dillard to accept the settlement as drafted." Pl.'s Opp. at p.6. Mr. Dillard focused on three areas of critical disagreement: 1) that the release, nondisparagement, and confidentiality provisions be mutual, and

---

work existed in that area, but would remain flexible to serve in other locations in the future as the work demanded.

4

not unilateral, provisions; 2) that Mr. Dillard could be terminated only for "just cause"[2]; and 3) that Mr. Dillard could not agree to various provisions obligating him as an employee[3].

Mr. Dillard sent Starcon two different drafts of his response, deleting, revising, and adding a number of provisions. First, Mr. Dillard inserted a provision stating that, upon reinstatement of his employment, he could be terminated for just cause only, and he deleted Starcon's "at-will" provision[4]. (Pl's Mem., Exhibit D, Pg #4, ¶ 5).

Next, Mr. Dillard deleted a portion of provision 11, which stated that, "In the event that Starcon's Releases are made a party to, or otherwise involved in, any dispute regarding Dillard's discharge of that responsibility, Dillard hereby agrees

---

[2] Mr. Dillard also refers to a number of re-employment terms that the parties had not previously discussed, such as his desire to be re-employed within 7 days of his receipt of Starcon's cash payment; that he would be paid at the then prevailing B-welder rate once he passed his exam; and that he would remain as an A Mechanic if he failed the B-Welder test two times.

[3] Specifically, Mr. Dillard would not agree to: 1) comply with undefined policies, rules and practices of Starcon or be subject to disciplinary action and/or termination; 2) be an at-will employee; 3) not "assist in any litigation or investigations" against Starcon; 4) pay Starcon liquidated damages; and 5) to recite that he had been given 21 days to consider the settlement.

[4] Mr. Dillard's provision was in direct conflict with Starcon's initial draft, which stated that the settlement agreement "in no way affects the at-will status of [Mr. Dillard's] employment or Starcon's right to terminate [Mr. Dillard's] employment." (D's Mem., Exhibit #2, Pg #3, ¶ 7).

5

to indemnify, save and hold harmless Starcon's Releases from any loss or liabilities resulting from his discharge of, or failure to discharge." (Pl's Mem. Opp., Exhibit D, Pg 5, ¶ 11).

Finally, Mr. Dillard deleted a portion of the provision regarding his cash payment. Specifically, Mr. Dillard deleted the following language: "It is understood and agreed to by Dillard that the Settlement Funds include both: all compensation that Dillard claimed or claims that he was owed; and, an additional amount of money in excess of $1.00 that is consideration for execution of this Agreement. Dillard affirms that he is entitled to no further relief than the amount specified herein, and that he would not be entitled to receive the sum specified in this Agreement except for his execution of this Agreement and his agreement to fulfill the promises as described therein."

Notably, this same provision provided that "Dillard specifically confirms and agrees that he is solely responsible for the state and federal income tax consequences, if any, of the above, for the payment made to him by Starcon, as they come due." (D's Mem, Exhibit #2, Pg 4, ¶ 11). Mr. Dillard did not amend this portion of the language in either of the revisions he submitted on March 25, 2005.

On March 30, 2005, Starcon sent Mr. Dillard a letter setting forth its assessment of his March 25th revisions. Starcon

6

deleted Mr. Dillard's "for cause" provision, replacing it with its original "at-will" employment provision. Starcon noted that all of Mr. Dillard's Starcon team members are "at-will" employees, and Mr. Dillard should be similarly situated. (D's Mem., Exhibit #5, Pg 3 of the letter; D's Mem., Exhibit #5, Pg 4, ¶ 7). Starcon explained that "[t]he just cause standard is not proper as [Mr. Dillard] is not unionized and the just cause standard is only applicable to unionized environments in which a just cause standard has been negotiated between the parties through the collective bargaining process." (D's Mem., Exhibit #5, Pg 3 of the letter). Starcon amended the provision to reflect what it considered to be a comparable "at-will" clause. (D's Mem., Exhibit #5, Pg 4, ¶ 7).

Next, Starcon responded to Mr. Dillard's deletions by explaining that Mr. Dillard's deletion of the language in provision 11 was inappropriate because "the IRS holds that damages received for non physical injury are taxable and settlements related to employment are generally assumed to be wage related." (D's Mem., Exhibit #5, Pg 1-2 of the letter; D's Mem. Opp., Exhibit #5, Pg 3-4, ¶ 4(b)). Starcon also stated that a number of other provisions were "to be discussed in a meeting with Mr. Dillard and Defendant representative." (D's Mem., Exhibit #5, Pg 3 of the letter).

Unable to resolve their differences, the parties brought their dispute to this Court for resolution- to no avail. On June 15, 2005, Starcon filed a Motion to Enforce the Oral Settlement Agreement. The Court ordered the parties to brief the subject, and offered to schedule an evidentiary hearing. The parties, however, informed the Court that, given the state of the record and the potential expense involved, they wished to proceed without the benefit of an evidentiary hearing. The Court agreed[5].

For the reasons outlined below, this Court finds that there was a meeting of the minds regarding the essential terms of the parties' oral agreement.

## DISCUSSION

Mr. Dillard argues that, when the parties exchanged written drafts of the settlement agreement, it became apparent that neither party agreed on the material terms of the settlement agreement. Previously, Mr. Dillard asserted that there was not a meeting of the minds with regard to two terms: (1) whether Mr. Dillard's employment would be terminable at will or for cause;

---

[5] The Court notes that the submitted declarations and recitations of the events in this case do not present competing views of the material facts. Instead, the parties dispute whether certain terms that were not negotiated during the oral negotiations were material; and whether there was a meeting of the minds on the material terms.

and (2) whether the agreed upon $65,000 cash payment was inclusive of taxes.

In its Motion to Enforce, Starcon argues that the parties had orally agreed to the only material terms of the agreement: (1) the terms of Mr. Dillard's reinstatement; (2) Mr. Dillard's $65,000 cash payment for damages; and (3) Mr. Dillard's promise to release Starcon from liability. Starcon asserts that the issue of Mr. Dillard's employment status and taxability were never discussed during the oral negotiation stage and are not material to the parties' settlement agreement. As such, Starcon argues, Mr. Dillard's "buyer's remorse" does not invalidate that agreement. The Court agrees.

Under both federal and Illinois state law, an oral agreement to settle a lawsuit is enforceable[6]. *Taylor v. Gordon Flesch Co., Inc.*, 793 F.2d 858, 862 (7th Cir. 1986); *Pritchett v. Asbestos Claims Management Corp.*, 332 Ill. App. 3d 890, 773 N.E.2d 1277 (2002). Courts apply ordinary contract construction rules when

---

[6] Plaintiff argues that this case should be resolved by applying federal, not state law, citing to *Taylor*, 793 F.2d at 862. However, the Seventh Circuit effectively overruled *Taylor* in *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002), which held that the enforcement of settlement agreements in cases arising under federal law should be resolved under state law. See *Transclean Corp. v. Motorvac Tech., Inc.*, No. Civ.01-287 JRT/FLN, 2002 WL 31185886, at *3 (D. Minn. Sept. 30, 2002). Practically speaking, Illinois and federal law do not differ significantly with regard to the formulation and enforcement of oral settlement agreements.

9

interpreting settlement agreements. *Id.* Additionally, a contract can be formed before there is an official document memorializing the deal." *Fidelity Mut. Life Ins. Co. v. American Nat'l Bank and Trust Co. of Chicago*, No. 93 C 2851, 1994 WL 14635 at * 2 (N.D. Ill. Jan 20, 1994); *Dawson v. General Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1999) (illustrating that anticipation of a more formal future writing does not nullify an otherwise binding agreement).

An oral agreement to settle a lawsuit is binding and enforceable if there is an offer, acceptance, and a meeting of the minds regarding the material or essential terms of the agreement. *McAllister v. Hayes*, 165 Ill. App.3d 426, 427, 519 N.E.2d 71 (1988); *see also, Abbott Labs v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999). Without establishing the existence of these elements, a party cannot prevail on its motion to enforce the settlement agreement. *Schaap v. Executive Industries, Inc.*, 760 F. Supp. 725, 726 (N.D. Ill. 1991) ("before a court will enforce a settlement agreement, the traditional elements of a contract must be present.")

Parties to a contract may or may not require, as a part of their agreement, that there be a written document setting forth the terms of their settlement before such a settlement can be final. *See Lambert Corp. v. Evans*, 575 F.2d 132 (7th Cir. 1978). And a party cannot avoid performance under an agreement to agree

by withholding its consent in bad faith. *Denari v. Genesis Insurance Co.*, No. 01 C 2015, 2004 WL 1375735 at * 2 (N.D. Ill. June 17, 2004) (citing *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1442 (7th Cir. 1992)).

In this case, the record illustrates that all of the elements for a valid oral contract existed when the parties entered into an oral agreement to settle the case on March 20, 2005. Here, the parties conducted settlement negotiations that resulted in an offer and acceptance on all material terms. (Pl.'s Mem. Opp. Pg. 4). Mr. Dillard has presented no evidence that his agreement was conditioned upon acceptance of a written version of their agreement, *Taylor v. Gordon Flesch Co.*, 793 F.2d 858, 862 (7th Cir. 1986), and the Court disagrees that the additional terms that remain in dispute are material. Therefore, the Court finds that the parties reached an oral agreement on March 20, 2005, and no further action was required to render the agreement enforceable. *See Zagone v. Bosques*, No. 02 C 6371, 2004 WL 170329 at *2 (N.D. Ill. January 20, 2004) ("If all of the conditions of a settlement agreement have been met and no further action is required to enforce such agreement, the settlement agreement is final for enforcement purposes.)

## A. The Parties Had a Meeting of the Minds With Regard to All of the Material Terms.

Mr. Dillard points to a host of terms in arguing that the parties had not reached a meeting of the minds after the March 20, 2005 meeting. (Pl.'s Mem. Opp. Pg. 4-5). Mr. Dillard specifically argues that the parties never agreed upon an essential term regarding whether Mr. Dillard would be reinstated as an at-will employee[7]. (Pl.'s Mem. Opp. Pg. 1). However, it is undisputed that this term was never discussed during the oral settlement negotiations. Mr. Dillard had been an at-will employee during his entire employment history with Starcon.

Mr. Dillard relies heavily upon the decisions in three federal cases to support his argument: *United States v. Orr Constr. Co.*, 560 F.2d 765 (7th Cir 1977); *DeFalco v. Oak Lawn Public Library*, No. 99 CV 02137, 2000 WL 263922, at *3 (N.D. Ill. Mar. 1, 2000); and *Degerman v. S.C. Johnson & Son Inc.*, 875 F. Supp. 560, 562 (E.D. Wis. 1995). The Court finds that these three cases are distinguishable, as each case involved the vagueness of a term that the parties had previously negotiated.

---

[7] Mr. Dillard also argues that the parties never reached an agreement on a host of other employment-related terms, such as when Mr. Dillard would return to work, whether he would be credited for his previous employment tenure, and what would happen to Mr. Dillard if he failed to pass the B-Welder exam. For purposes of clarity and brevity, the Court's discussion will focus upon Mr. Dillard's at-will status.

12

For example, the *Orr* Court held that the phrase "proper legal releases," as called for by the settlement agreement, was not sufficiently definite and that it could not be determined either "by virtue of the agreement itself or by commercial practice or other usage or custom." *Orr*, 560 F.2d at 769. But it was not merely that the phrase was indefinite; the court's analysis hinged on the fact that the phrase was material. *Id.* at 770-71. The court specifically noted that the scope of the phrase was critical to determine whether the settlement would result in the complete termination of litigation between the parties, and the inclusion (but not the definition) of the phrase was specifically negotiated for during negotiations. *Id.*

Similarly, the *Degerman* court refused to enforce a purported settlement agreement because the parties could not agree upon the terms of a confidentiality clause. 875 F. Supp. at 562. The *Degerman* parties had acknowledged that the confidentiality clause was the subject of extensive negotiations and the parties consistently argued about its inclusion in the settlement agreement. *Id.* Finally, the Court in *DeFalco* found that the term "release" and a confidentiality provision were both material and indefinite. 2000 WL 263922 at *3-4. The court noted that, while the parties negotiated for a release and even conceded that the release "was one of the conditions of the settlement," the parties failed to discuss whether that release would include only

13

the federal claims, or would also include state court claims. *Id.* (finding that a negotiated for confidentiality clause was indefinite).

Each of these cases centered around the parties' failure to define a term that was negotiated for and considered to be material to the parties' decision to settle their litigation. Conversely, Mr. Dillard's at-will employee status was never discussed during the settlement negotiations, even though other, more seemingly mundane details (such as how many times he would be permitted to take the B Welder exam and whether Starcon would pay for his training) were discussed and ultimately agreed upon. *See Flood v. Ty, Inc.*, No. 02 C 9497, 2005 U.S. Dist. LEXIS 7974, at *39. (N.D.Ill. April 5, 2005) (stating that confidentiality and release provisions not discussed in oral settlement negotiations are not material terms of an oral settlement agreement.) The Court again notes that, during the course of his employment with Starcon, Mr. Dillard had always been an at-will employee, as had all of his non-unionized coworkers. Thus, even if this term had been material, the parties' previous relationship and course of dealing would have enabled the Court to define this term. *See Orr*, 560 F.2d at 769-71.

The enforcement of this agreement is not affected by the fact that the parties failed to address other terms regarding Mr. Dillard's reemployment, such as whether he would be permitted to

remain an A Mechanic if he failed to pass the B Welder exams. "Every feasible contingency that might arise in the future, need not be provided for in a contract for the agreement to be enforceable." *Pritchett*, 773 N.E.2d at 1282; *First Nat'l Bank of Oak Lawn v. Minke*, 425 N.E.2d 11, 99 Ill. App. 3d 10, 14 (1981) (holding that the lack of nonessential or non-material terms will not render a contract unenforceable). The Court cannot conclude that there was no meeting of the minds with regard to the terms that were negotiated, simply because Plaintiff failed to raise other issues until after the agreement had been reached.

## B. Mr. Dillard Knowingly Entered into the Agreement.

Mr. Dillard claims that the parties' oral agreement is unenforceable because "plaintiff never signed anything." Pl's Opp. at p. 14. To the contrary, the law is clear that "an oral agreement to settle a Title VII claim is enforceable." *Glass v. Rock Island Refining Corp*, 788 F.2d 450, 454 (7th Cir. 1986); *see also Pohl v. Unites Airlines, Inc.*, 213 F.3d 336, 337 (7th Cir. 2000) ("the belief of some litigants in pursuing settlement of their claims that they can change their mind at any time before they actually sign the settlement agreement is often unfounded in law.")

Next, Mr. Dillard claims that neither he nor his attorney believed that he had reached a final and binding agreement on March 20, 2005. Mr. Dillard and his counsel have submitted

15

declarations stating as much, but the totality of the evidence belies this assertion. First, the Court notes that Mr. Dillard's counsel, Ms. Smylie, concedes that she had communicated to Starcon Mr. Dillard's acceptance of the terms that had been negotiated between the parties. Ms. Smylie indicated early on in the negotiations that the fairly detailed re-employment terms were adequate, and later negotiations focused only upon Mr. Dillard's cash payment. When the parties then reached an accord on the $65,000 cash payment, Ms. Smylie never indicated that there were additional terms that would need to be negotiated.

In addition, Ms. Smylie repeatedly acknowledges that Starcon had made clear on more than one occasion that Mr. Dillard would have only until March 20, 2005 to accept Starcon's settlement offer; March 20th was Starcon's "drop dead" date, because its settlement position would change if it would be forced to incur the expense of the depositions scheduled for the following week – which happened to be the week before the close of discovery. Given Ms. Smylie's acknowledgment that Starcon was insisting on an agreement from Mr. Dillard by March 20th, it is difficult to accept that neither Plaintiff nor counsel understood that the parties' settlement on that day was final. And given Starcon's stated position regarding the March 20th cutoff date, Plaintiff's

failure to communicate his desire to make the parties' agreement contingent upon a finalized written agreement speaks volumes[8].

In short, the evidence shows that the parties engaged in settlement negotiations covering Mr. Dillard's re-employment, a cash payment, and his agreement to release Starcon from liability. Mr. Dillard communicated his acceptance of these terms to Starcon just as discovery was about to close and knowing that Starcon was insisting on a settlement right then and there. And at no time did Mr. Dillard express to Starcon his desire or belief that the settlement was not final until he had the opportunity to review a written agreement and/or to hash out other details and concessions. Therefore, the Court rejects Mr. Dillard's claim that his settlement was not knowing and voluntary.

Finally, the Court acknowledges that the parties' written, competing drafts of the settlement agreement conflict in many respects. However, those disagreements center upon non-material terms. As such, the submission of conflicting drafts does not negate the inference that Mr. Dillard and Starcon achieved a meeting of the minds with regard to the essential and material

---

[8] The Court also notes Plaintiff's shifting explanation for why he would not agree to sign the settlement agreement; Mr. Dillard originally stated that the fact that he was receiving $65,000 before, as opposed to after, taxes was a sticking point for settlement. Plaintiff's brief, however, does not advance the issue.

17

terms of the agreement. *See Wilson v. Wilson*, 46 F.3d 660, 667 (7th Cir. 1995) (upholding the parties' oral settlement agreement despite the parties' inability to agree on a written draft of the oral settlement, where the disagreement centered upon nonessential terms.)

The Court finds that the parties orally agreed to and are bound by the following terms: (1) Starcon will pay Mr. Dillard $65,000 in damages; (2) Mr. Dillard will be reinstated as an "A Mechanic," making $22.35 an hour; (3) Starcon will provide and pay for Mr. Dillard to undergo training for the B Welder position, provided that Mr. Dillard maintains a "B" average; 4) Starcon will provide Mr. Dillard with two opportunities to pass the "B Welder" test; and (6) Mr. Dillard will be reinstated in the Chicago, Illinois area, as long as work exists in that area, but will remain flexible to serve in other locations in the future as the work demands. The Court further finds that these terms are sufficiently definite and enforceable.

## Conclusion

The Court rejects Mr. Dillard's attempt to derail the parties' negotiated settlement agreement. While it is clear that Mr. Dillard feels strongly about returning to Starcon as an at-will employee -- despite the fact that he has always been an at-will employee at Starcon -- his failure to raise the issue during

the negotiations culminating in an oral agreement renders the point immaterial. Rather, for the reasons set forth above, the Court finds that the parties reached a valid settlement agreement on March 20, 2005, and that the parties' agreement is enforceable as outlined above.

DATE: December 2, 2005

ENTERED:

ARLANDER KEYS
United States Magistrate Judge